UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAUL MAAS RISENHOOVER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 19-2757-BAH |
| ) | Judge Beryl A. Howell |
| ) | |
| CENTRAL INTELLIGENCE ) | |
| AGENCY *et al.*, ) | |
| ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Plaintiff Paul Maas Risenhoover filed this lawsuit under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel disclosure of records maintained by the Central Intelligence Agency ("CIA"), Department of Defense ("DOD"), and Department of State ("State"). Pending before the Court are two motions: defendants have moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, Defs.' Mot. for Summ. J. ("Defs.' Mot."), ECF No. 95, and plaintiff has moved for reimbursement of his fees and costs, Pl.'s Mot. for Fees and Costs, ECF No. 100. For the reasons explained below, defendants' motion is granted and plaintiff's motion is denied.

I.   **BACKGROUND**

Set out below is the relevant factual and procedural background for resolution of the pending motion.

   **A. Plaintiff's FOIA Requests At Issue**

Plaintiff challenges the responses of three separate federal agencies to his alleged FOIA requests, which are described below.

### 1. CIA Records

On October 23, 2015, plaintiff requested:

> [R]ecords from between 1952 and 1955 relating to CIA employees known as the Third Forces or Chinese Third Forces, who served under control and direction of CIA covert operations case officers and other CIA officials, and who were resettled on the island of Formosa at the expense of the US government and CIA using Congressionally approved funds in the amount of US $60 million authorized by the Operations Coordination Board and President's National Security Council.

Defs.' Mot., Ex. A to Decl. of Vanna Blaine ("Blaine Decl."), ECF No. 95-6.

By letter of March 14, 2016, the CIA neither confirmed nor denied the existence of records, invoking FOIA Exemptions 1 and 3, codified in 5 U.S.C. § 552, in conjunction with Section 6 of the CIA Act of 1949 and Section 102A(i)(1) of the National Security Act of 1947. *Id*. ¶ 7 & Ex. C.  Plaintiff appealed the decision to the CIA's Agency Release Panel ("CIA Panel"), which "denied" the appeal "in full," *id*. ¶¶ 8, 10, while clarifying "some aspects of the initial action," *id*. Ex. F., ECF No. 95-11 at 2.  The CIA Panel "determined that the fact of the existence or nonexistence" of responsive records "is not in itself classified" and upheld as reasonable the agency's search "calculated to locate records that might reflect an open or otherwise acknowledged relationship with the CIA." *Id*.  At the same time, the CIA Panel maintained, in accordance with Section 3.6(a) of Executive Order 13526, that the agency could neither confirm nor deny the existence of "other records that might reveal a classified or otherwise unacknowledged connection with the CIA[.]" *Id*. (citing Exemptions 1 and 3).

### 2. DOD Records

On August 25, 2019, plaintiff requested:

> [A]ll records of the meeting of the CIA with a DOD rep, and Dr. Wilder of the NSC and Mr. Hart of State's Taiwan Coordination Office, the prep and briefing docs, and the post trip reports for mid February 2006 to Taiwan about: 1. terminating, cessation National Unification Counsel; 2. terminating, ceasing National Unification Guidelines; (3) UN referendum under name of Taiwan [and] [a]lso . . . the US military government directive from the White House passed orally to Chen Shuibian by Stephen Young of AIT Taipei.

Defs.' Mot., Ex. A to Decl. of Ely S. Ratner ("Ratner Decl."), ECF No. 95-13 at 2.

Following a search using terms in the request, DOD located three "documents" totaling nine potentially responsive pages, one of which was "truly responsive to Plaintiff's request[.]" Ratner Decl. ¶ 9. By letter dated November 2, 2020, DOD informed plaintiff of its final decision to withhold the "responsive documents, totaling nine pages" fully under FOIA Exemptions 1, 3, 5, and 6. *Id*., Ex. B., ECF No. 95-14 at 2.

### 3. State Department Records

In response to this lawsuit, State conducted searches of its FOIA case management system but located no request from plaintiff "seeking records like those described in the Complaint." Defs.' Mot., App'x. 3, Decl. of Susan C. Weetman ¶ 6, ECF No. 95-15. During this litigation, State "received a consultation request" from DOD "consisting of one document, nine pages." *Id*. ¶ 15. On October 9, 2020, State "returned the record to DOD" with redactions, requesting that DOD "withhold the record in part under FOIA Exemption 1, pursuant to Executive Order 13526, sections 1.4(b) and 1.4(d)." *Id*. ¶ 17.[1]

### B. Procedural Overview

---

[1] The consultation request imposed no statutory duty on the State Department to disclose the records. Under DOD FOIA regulations, "a DoD Component that is initially processing a request contain[ing] information of interest to another DoD Component or other Federal agency . . . should typically consult with" the interested component or agency "prior to making a release determination," but the DOD component is "ultimately" responsible for responding to the requester and releasing any responsive material. 32 C.F.R. § 286.7(d)(1).

3

Plaintiff filed this action on September 5, 2019, and was subsequently, in December 2019, granted electronic filing privileges, but he then began docketing bewildering motions of dubious relevance to the FOIA claims, such as a 250-page self-described "Ex Parte Motion to Intervene in *Sineneng-Smith v US*, SCUS No 19-67 pending oral argument Feb 2020 CE, Motion for Joinder in *Sineneng-Smith v US*", ECF No. 11, and a 445-page self-described "Ex Parte Motion to Transfer Case to the Honorable Ruth Ginsburg, Associate Justice of the Supreme Court of the United States, alternatively to the Circuit Justice, the Honorable Elena Kagan, Associate Justice of the Supreme Court of the United States, Ex Parte Motion to Intervene in *Sineneng-Smith v. USA*, Ex Parte Motion for Joinder in *Sineneng-Smith v. USA* pending reply of Mark Fleming, Esq. and the Solicitor General to their consent to intervention or joinder," ECF No. 15. These motions and plaintiff's other seven motions, some of which contained multiple subparts, were denied, and plaintiff was enjoined from further filings until defendants could respond to the complaint. Order (Feb. 7, 2020), ECF No. 23; *see* Min. Order (Apr. 13, 2020) (granting defendants' consent motion for a stay and extension of the FOIA's processing, production, and reporting deadlines due to the effect of the COVID-19 pandemic on federal government operations). [2]

In light of defendants' status report showing progress, ECF No. 31, the Court ordered the parties to file by December 4, 2020, a joint status report on any issues to be litigated and a

---

[2] During the course of litigation, plaintiff's similar filings were stricken from the record. *See* Order (May 23, 2024), ECF No. 79 (warning that "[a]ny like submission docketed after" May 23, 2024, would "be summarily stricken from the record pursuant to the February 7, 2020 filing injunction") (citing ECF No. 23 at 3)); Min. Order (Aug. 20, 2024) (striking plaintiff's 1,294-page motion and 267-page supplemental memorandum). On September 13, 2024, the Court finally revoked plaintiff's electronic filing privileges in response to (1) his filing of yet another "characteristically baffling" motion and (2) his "nonconforming emails and attachments—as many as eleven in one day" that "unduly burdened staff members and clogged up the intake counter's electronic messaging box." Order (Sept. 13, 2024), ECF No. 93.

4

proposed schedule. Min. Order (Nov. 2, 2020). The parties agreed to additional time for plaintiff to have certain foreign language documents he believed were improperly withheld as classified material to be translated to English, which resulted ultimately in an indefinite stay of the proceedings. *See* Joint Status Report, ECF Nos. 39, 40; Min. Orders (Jan. 5, 2021, Feb. 12, 2021). On July 1, 2021, the Court lifted the stay and adopted the parties' proposed briefing schedule, which was amended several times but vacated four months later at the parties' request due to "the significant volume and nature of the documents and information" plaintiff had provided to defense counsel "on a rolling basis" for the CIA's consideration. Joint Status Report, ECF No. 47 at 2; *see id.* (describing the material as "approximately 50 emails . . . best characterized as containing a mixture of . . . text, citations to court rulings, and hyperlinks to websites," some of which "include text written in a foreign language").

After multiple status reports and modified briefing schedules, defendants filed the instant motion for summary judgment, which, along with plaintiff's request for fees and costs, is now ripe for resolution.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In FOIA cases, summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Aguiar v. DEA*, 865 F.3d 730, 734-35 (D.C. Cir. 2017) (internal quotation marks omitted) (quoting *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013)); *see also Students Against Genocide v. Dep't of*

*State*, 257 F.3d 828, 833 (D.C. Cir. 2001) ("[A]n agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced or is wholly exempt from the Act's inspection requirements.'" (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978))). Most FOIA cases will be resolved on summary judgment. *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

To balance the public's interest in governmental transparency and "legitimate governmental and private interests [that] could be harmed by release of certain types of information," *Judicial Watch, Inc. v. U.S. Dep't of Defense*, 913 F.3d 1106, 1108 (D.C. Cir. 2019) (internal quotation mark omitted) (quoting *FBI v. Abramson*, 456 U.S. 615, 621 (1982)), FOIA has nine exemptions, set forth in 5 U.S.C. § 552(b), which "are 'explicitly made exclusive' and must be 'narrowly construed,' " *Milner v. Dep't of the Navy*, 562 U.S. 562, 565 (2011) (citations omitted) (first quoting *EPA v. Mink*, 410 U.S. 73, 79 (1979); and then quoting *Abramson*, 456 U.S. at 630). "[T]hese limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976).

FOIA authorizes federal courts to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). District courts must "determine de novo whether non-disclosure was permissible." *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 522 (D.C. Cir. 2015). "FOIA places the burden 'on the agency to sustain its action,' and the agency therefore bears the burden of proving that it has not 'improperly' withheld the requested records." *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 922 F.3d 480,

487 (D.C. Cir. 2019) (citations omitted) (first quoting 5 U.S.C. § 552(a)(4)(B); and then quoting *U.S. Dep't of Justice v. Tax Analysts,* 492 U.S. 136, 142 n.3 (1989)). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.' " *Judicial Watch, Inc. v. U.S. Dep't of Defense*, 715 F.3d 937, 941 (D.C. Cir. 2013) (quoting *ACLU v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011)).

## III. DISCUSSION

Plaintiff disputes, to the extent intelligible, the adequacy of defendants' searches for responsive records and the CIA's *Glomar* response. *See generally* Pl.'s Opp'n , ECF No. 97. As discussed in more detail below, plaintiff's challenges are unavailing.

### A. CIA's *Glomar* Response

Defendants argue that the CIA's decision to neither confirm nor deny the existence of records reflecting a classified CIA affiliation with the groups named in the FOIA request was proper under Exemptions 1 and 3. *See* Defs.' Mem. of Points and Authorities ("Defs.' Mem."), ECF No. 95-1 at 14-23. The Court agrees.

The CIA neither confirmed nor denied "a classified affiliation with groups alleged" in the FOIA request "to consist of 'CIA employees'." Blaine Decl. ¶ 50. Declarant Mary C. Williams, Blaine's successor, is "a senior CIA official" who, like Blaine, "hold[s] original classification authority at the TOP SECRET level[.]" Defs.' Mot., App'x 1, Williams Decl. ¶ 2, ECF. No. 95-4. Williams confirms Blaine's attestations in 2021 and affirms that "[d]espite the passage of time and the Plaintiff's subsequent submissions in this lawsuit," the CIA's *Gloma*r response under FOIA Exemptions 1 and 3 remains "the only appropriate and justified response[.]" Williams Decl. ¶ 10. As detailed next, Exemptions 1 and 3 are properly invoked.

487 (D.C. Cir. 2019) (citations omitted) (first quoting 5 U.S.C. § 552(a)(4)(B); and then quoting *U.S. Dep't of Justice v. Tax Analysts,* 492 U.S. 136, 142 n.3 (1989)). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.' " *Judicial Watch, Inc. v. U.S. Dep't of Defense*, 715 F.3d 937, 941 (D.C. Cir. 2013) (quoting *ACLU v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011)).

**III. DISCUSSION**

Plaintiff disputes, to the extent intelligible, the adequacy of defendants' searches for responsive records and the CIA's *Glomar* response. *See generally* Pl.'s Opp'n , ECF No. 97. As discussed in more detail below, plaintiff's challenges are unavailing.

    **A.  CIA's *Glomar* Response**

Defendants argue that the CIA's decision to neither confirm nor deny the existence of records reflecting a classified CIA affiliation with the groups named in the FOIA request was proper under Exemptions 1 and 3. *See* Defs.' Mem. of Points and Authorities ("Defs.' Mem."), ECF No. 95-1 at 14-23. The Court agrees.

The CIA neither confirmed nor denied "a classified affiliation with groups alleged" in the FOIA request "to consist of 'CIA employees'." Blaine Decl. ¶ 50. Declarant Mary C. Williams, Blaine's successor, is "a senior CIA official" who, like Blaine, "hold[s] original classification authority at the TOP SECRET level[.]" Defs.' Mot., App'x 1, Williams Decl. ¶ 2, ECF. No. 95-4. Williams confirms Blaine's attestations in 2021 and affirms that "[d]espite the passage of time and the Plaintiff's subsequent submissions in this lawsuit," the CIA's *Gloma*r response under FOIA Exemptions 1 and 3 remains "the only appropriate and justified response[.]" Williams Decl. ¶ 10. As detailed next, Exemptions 1 and 3 are properly invoked.

FOIA Exemption 1 applies to "matters that are . . . specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552 (b)(1). Exemption 1 "cover[s] not only the content of protected government records but also the fact of their existence or nonexistence." *Larson v. Dep't of State*, 565 F.3d 857, 861 (D.C. Cir. 2009). In considering withholdings under Exemption 1, "a reviewing court 'must recognize that the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse [e]ffects . . . might occur as a result of public disclosures of a particular classified record.' " *Krikorian v. Dep't of State*, 984 F.2d 461, 464 (D.C. Cir. 1993) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (internal quotation marks omitted)).

Generally, courts "lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case." *Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980). Moreover, courts must "accord 'substantial weight' to agency affidavits" in national security cases, *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)), particularly "concerning the details of the classified status of the disputed record," *Ray v. Turner*, 587 F.2d 1187, 1193 (D.C. Cir. 1978); *see also Fitzgibbon v. CIA*, 911 F.2d 755, 762 (D.C. Cir. 1990). Indeed, "the text of Exemption 1 itself suggests that little proof or explanation is required beyond a plausible assertion that information is properly classified." *Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007). At the same time, however, the court does not "relinquish[ ] [its] independent responsibility" "to conduct a de novo review of the classification decision." *Goldberg v. U.S. Dep't of State*, 818 F.2d 71, 77 (D.C. Cir. 1987) (emphasis and internal quotation marks omitted) (quoting *Military*

8

*Audit Project*, 656 F.2d at 738).  In making such an assessment, the court must remain mindful "that any affidavit or other agency statement of threatened harm to national security will always be speculative to some extent, in the sense that it describes a potential future harm rather than an actual past harm."  *Halperin*, 629 F.2d at 149.  "[T]o require an actual showing that particular disclosures of" classified information would cause "identifiable concrete harm" would "overstep[] by a large measure the proper role of a court in a national security FOIA case."  *Id*.

Executive Order 13562 allows an agency to classify information only if all of the following conditions are met:

> (1) an original classification authority is classifying the information;
> (2) the information is owned by, produced by or for, or is under the control of the United States Government;
> (3) the information falls within one or more of the categories of information listed in section 1.4 of this order; and
> (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

Exec. Order No. 13526, 75 Fed. Reg. 707, § 1.1(a) (Dec. 29, 2009).  The CIA attests that (1) "the existence or nonexistence of the requested records is a properly classified fact that concerns section l.4(c) of the Executive Order, 'intelligence activities' and 'intelligence sources and methods' "; (2) "the records are owned by and under the control of the U.S. Government"; and (3) "the unauthorized disclosure of the existence or nonexistence of requested records reasonably could be expected to result in damage to national security."  Blaine Decl. ¶ 34.  Moreover, section 3.6(a) "specifically" authorizes an agency to assert a *Glomar* response, *id.* ¶ 33, "whenever the fact of" the requested records' "existence or nonexistence is itself classified,"

9

Exec. Order 13526 § 3.6(a).  That "CIA employs covert officers" is "itself a properly classified fact."  Blaine Decl. ¶¶ 50, 52.

FOIA Exemption 3 applies to matters "specifically exempted from disclosure by statute" if that statute either (1) "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue," or (2) "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A)(i)–(ii).  The D.C. Circuit has explained that "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Morley*, 508 F.3d at 1126 (quoting *Ass'n of Retired R.R. Workers v. U.S. R.R. Ret. Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987)).  Thus, the agency "need only show that the statute claimed is one of exemption as contemplated by Exemption 3 and that the withheld material falls within the statute." *Larson*, 565 F.3d at 865 (citing *Fitzgibbon v. CIA*, 911 F.2d 755, 761–62 (D.C. Cir. 1990)).

The CIA invokes Exemption 3 in conjunction with the National Security Act of 1947, 50 U.S.C. § 102A(i)(1), as amended, 50 U.S.C. § 3024(1), and Section 6 of the Central Intelligence Agency Act of 1949 ("CIA Act"), 50 U.S.C. § 403(g).  *See* Blaine Decl. ¶¶ 47-51.  The National Security Act requires the Director of National Intelligence to "protect intelligence sources and methods from unauthorized disclosure," 50 U.S.C. § 3024(i)(1).  As interpreted by the D.C. Circuit, this language exempts from disclosure under FOIA material that the agency "demonstrates . . . can reasonably be expected to lead to unauthorized disclosure" of intelligence methods or sources. *Wolf v. CIA*, 473 F.3d 370, 377 (D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982)); *see also Larson*, 565 F.3d at 863 (allowing for

10

withholding of information that "could provide enough clues to allow some individuals to determine who provided the information to the CIA"). In light of the national-security interests implicated by such material, courts give "even greater deference to CIA assertions of harm to intelligence sources and methods under the National Security Act." *Wolf*, 473 F.3d at 377 (citing *CIA v. Sims*, 471 U.S. 159, 168–69 (1985)); *see Am. C.L. Union v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011) ("We have previously held that the National Security Act, which also authorizes the Executive to withhold 'intelligence sources and methods' from public disclosure, 50 U.S.C. § 403–1(i)(1), qualifies as an exemption statute under [E]xemption 3.") (citations omitted)). Section 6 of the CIA Act provides that the CIA "shall be exempted from the . . . provisions of any other law which require[s] the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by" the agency. 50 U.S.C. § 3507.

The CIA has shown that Exemptions 1 and 3 "apply independently and co-extensively to Plaintiff's request about 'CIA employees known as the Third Forces or Chinese Third Forces'." Blaine Decl. ¶¶ 51-52. The agency plausibly explains how an "official CIA acknowledgement" confirming or denying "the existence or nonexistence" of such "would delve into clandestine CIA intelligence activities, and intelligence sources and methods," Blaine Decl. ¶¶ 22-30, and why it "would implicate intelligence sources and methods in a manner harmful to U.S. national security," *id*. ¶ 46; *see id*. ¶¶ 36-45.

Plaintiff has offered no cogent rebuttal to the CIA's declarations. Therefore, defendants are entitled to summary judgment on the *Glomar* response.

11

**B. DOD's Responses**

Plaintiff does not dispute DOD's withholdings under FOIA Exemptions 1, 5, and 6. Ratner Decl. ¶¶ 10-27. Defendants argue that DOD properly withheld all three responsive documents in full under Exemption 5 as privileged presidential communications. *See* Def.'s Mem. at 36-39. The Court agrees.

FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Two conditions must be met for a record to qualify for this exemption: (1) "its source must be a Government agency;" and (2) "it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001); *see also Nat'l Inst. of Military Justice v. U.S. Dep't of Def. ("NIMJ")*, 512 F.3d 677, 682 (D.C. Cir. 2008); *Stolt-Nielsen Transp. Grp. LTD. v. United States*, 534 F.3d 728, 733 (D.C. Cir. 2008). The Supreme Court has made clear that "the first condition of Exemption 5 is no less important than the second; the communication must be 'inter-agency or intra-agency.' " *Klamath*, 532 U.S. at 9 (quoting 5 U.S.C. § 552(b)(5)). The second condition "covers the presidential communications privilege, the deliberative process privilege, and the attorney-client privilege." *Judicial Watch*, 913 F.3d at 1109; *see also Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015).

The "D.C. Circuit has consistently viewed Exemption 5 as covering the presidential communications privilege, among other privileges," *Buzzfeed, Inc. v. Federal Bureau of Investigation*, 613 F. Supp. 3d 453, 464 (D.D.C. 2020) (collecting cases), and, when applicable,

"'the presidential communications privilege applies to documents in their entirety,'" *id*. at 473-74 (quoting *In re Sealed Case*, 121 F.3d 729, 745 (D.C. Cir. 1997) (other citation omitted).

DOD's unrefuted declaration establishes each withheld document as a presidential communication and plausibly explains the "foreseeable harm" in disclosure. *See* Ratner Decl. ¶¶ 13-17. Therefore, defendants are entitled to summary judgment based on DOD's withholding of the documents in full under Exemption 5. *See Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016) ("The District Court must always determine for itself whether the record and any undisputed material facts justify granting summary judgment."). As a result, there is "no need to consider" the propriety of DOD's redaction of information from the same documents under Exemptions 1 and 6. *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011); *see* Ratner Decl. ¶¶ 21-27.

### C. Adequacy of the Search

When, as here, a requester challenges an agency's response based on the adequacy of the search performed, "the defending 'agency must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents.'" *Morley*, 508 F.3d at 1114 (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). "In order to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "Summary judgment may be based on affidavit, if the declaration sets forth sufficiently detailed information 'for a court to determine if the search was adequate.'" *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 838 (D.C. Cir. 2001) (quoting *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995)). Such "[a]gency affidavits are accorded a

13

presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of [ ] documents." *SafeCard, Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)(internal quotation marks and citation omitted).

    An adequate search is established by the "appropriateness" of the search methods employed, not the "fruits of the search." Thus, the fact that certain documents were not located does not equate with an inadequate search. *Boyd v. Criminal Div. of U.S. Dept. of Justice*, 475 F.3d 381, 390-91 (D.C. Cir. 2007) (citing *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003); *Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999)); *see also SafeCard*, 926 F.2d at 1201 ("When a plaintiff questions the adequacy of the search . . ., the factual question it raises is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant."). Summary judgment is inappropriate only "if a review of the record raises substantial doubt" about the reasonableness of the search. *Valencia-Lucena*, 180 F.3d at 326 (citing *Founding Church of Scientology v. National Security Agency*, 610 F.2d 824, 837 (D.C. Cir. 1979)). Substantial doubt may arise from an agency's failure "to follow through on obvious leads to discover requested documents" or where the record contains "positive indications of overlooked materials." *Id*. at 325-26 (citations and internal quotation marks omitted); *see id*. at 327 (finding search inadequate where the agency informed the requester that additional responsive records "may be located" at the "federal records center" but declined to search its stored records at that location). As detailed below, each defendant has demonstrated a reasonably adequate search.

    **1. CIA's Search**

    The CIA "is composed of several Directorates that are responsible for fulfilling the [agency's] clandestine mission . . . and providing workforce support." Blane Decl. ¶ 14. Here,

the Directorate of Operations ("DO") records system was identified as "the directorate most likely to maintain responsive records[.]" *Id.* ¶ 19. That system "contains information on persons who are of foreign intelligence or counterintelligence interest to the CIA and other U.S. Government agencies," and "trained personnel [routinely] conduct FOIA searches" of the DO system, *id.* ¶ 15. The CIA searched for records "that might reflect an open or otherwise acknowledged relationship" between the so-called Third Forces or Chinese Third Forces and the CIA from 1952 through 1955 or "would reveal" unclassified information" but initially found nothing responsive. *Id.* ¶¶ 10, 20, 22. A search "across non-exempt databases" that included "all previously released CIA records," *id.* ¶ 16, located one responsive record "from the specified time period . . . regarding 'the Third Forces or Chinese Third Forces'," which "has been publicly available on CIA.gov" since 2000 under "document identifier C02619699," *id.* ¶18. The CIA acknowledges this omission from "its FOIA response letters," *id.*, n.2, and has now "provided an alternative form of access" to satisfy its statutory obligation to disclose the responsive record. *Oglesby*, 920 F.2d at 70; *see id.* (explaining that "an agency 'need not respond to a FOIA request for copies of documents' " made available in a reading room or in "one central location for [the requester's] perusal") (quoting *Tax Analysts v. United States Dep't of Justice*, 845 F.2d 1060, 1065 (D.C. Cir. 1988) (other citations omitted)); *accord Isiwele v. United States Dep't of Health & Human Servs.*, 85 F. Supp. 3d 337, 355, n.3 (D.D.C. 2015) (noting that the Executive Office for U.S. Attorneys had "fulfilled its disclosure obligation . . . by informing plaintiff that the U.S. Attorneys' Manual is publicly available, free of charge, on the worldwide web and providing him the internet link") (internal quotation marks and citation omitted)).

      The CIA attests that the DO's search of non-exempt files "was reasonably calculated to discover any records that may reflect an open or otherwise acknowledged relationship between"

the CIA and the groups named in the FOIA request, *i.e.*, the Third Forces or Chinese Third Forces.  Blaine Decl. ¶ 20.  Plaintiff has not offered "evidence of circumstances sufficient to overcome" summary judgment.  *Iturralde*, 315 F.3d at 315.  His speculative claims of overlooked files, *see* Opp'n at 4, 8-9, are unavailing for two reasons.

First, plaintiff mentions the CIA's operational files, which are exempt from FOIA's search and review provisions save exceptions, *see* 50 U.S.C. § 3141(c), that are neither asserted nor apparent here.[3]  "In 1995, the Director of the CIA claimed . . . a FOIA exemption, under the former CIA Information Act, with respect to DO operational files."  *Looks Filmproduktionen GmbH v. Central Intelligence Agency*, 199 F. Supp. 3d 153, 170 (D.D.C. 2016) (citations omitted).  The "statute and the relevant case law make clear that for the CIA to be initially afforded the protection of the operational files exemption with respect to the DO operational files" documenting "the conduct of foreign intelligence or counterintelligence operations, the Director need only claim the exemption, as occurred in 1995."  *Id*. at 171 (citing 50 U.S.C. § 3141(b)(1) (internal quotation marks omitted)).  Once claimed, courts "have routinely considered searches to be adequate that excluded exempt operational files, without further explanation of whether the files were properly designated as operational files."  *Id.* (collecting cases).  Plaintiff has provided no basis for a departure here.

Second, plaintiff suggests that the CIA should have searched the files of the National Archives and Records Administration, Pl.'s Opp'n at 8-9, but an "agency need only conduct a

---

[3]  As relevant here, the CIA Act defines "operational files" as "files of the National Clandestine Service which document the conduct of foreign intelligence or counterintelligence operations or intelligence or security liaison arrangements or information exchanges with foreign governments or their intelligence or security services" and "files of the Office of Personnel Security which document investigations conducted to determine the suitability of potential foreign intelligence or counterintelligence sources[.]" 50 U.S.C. § 3141(b)(1),(3).

reasonable search of its own files in response to a FOIA request because 'possession or control' of the documents at issue is, in most circumstances, 'a prerequisite to FOIA disclosure duties'[.]" *Gawker Media, LLC v. United States Department of State*, 266 F. Supp. 3d 152, 158 (D.D.C. 2017) (quoting *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980) (bracket in original)).

### 2.  DOD's Search

The FOIA Division of the Office of the Secretary of Defense and Joint Staff "tasked the Records and Declassification Division (RDD)" with searching for responsive records.  Ratner Decl. ¶¶ 5-7.  RDD conducted an electronic search of the executive archive, which contains approximately 70 million scanned pages of previously boxed paper records and is "text searchable." *Id*. ¶ 9.  Utilizing the words and phrases in plaintiff's request—*i.e*., "Terminating Cessation National Unification Council," "Terminating Ceasing National Unification Guidelines," "UN Referendum Under Name of Taiwan," "US Government Directive to Chen Shuibian from Stephen Young of AIT Taipei" and "Chen Shuibian" and "Stephen Young," *id*.—RDD located three documents, totaling nine pages," only one of which was "truly responsive" to plaintiff's request, *id*. ¶¶ 7-9.

Plaintiff has not asserted a plausible rebuttal to DOD's detailed declaration.  To the extent he seeks answers to various questions, *see* Pl.'s Opp'n at 21 (Proposed Order), and validation of his perplexing theories, *see id.* at 6-8; 11; 16-18, it is "well settled that an agency is not required by FOIA to create a document that does not exist in order to satisfy a request" or "to obtain or regain possession of a record[.]" *Yeager v. Drug Enf't Admin*., 678 F.2d 315, 321 (D.C. Cir. 1982).  Nor does FOIA require "an agency to answer questions disguised as a FOIA request" or "to have clairvoyant capabilities to discover the requester's need." *Hudgins v. IRS*,

620 F. Supp. 19, 21 (D.D.C.1985), *aff'd mem.*, 808 F.2d 137 (D.C. Cir. 1987) (internal quotation marks and citations omitted).

### 3. State Department's Search

Defendants argue that plaintiff's claims against the State Department fail as a matter of law. *See* Defs.' Mem. at 42-47. The Court agrees.

As noted above, the Complaint neither identifies a FOIA request addressed to the State Department nor provides a tracking number. Nevertheless, State's Office of Information Programs and Services (IPS) sought "to determine whether the Department had received a FOIA request matching" the description in the Complaint. Weetman Decl. ¶ 5. Following a reasonably crafted search, *see id*. ¶¶ 9-13, State concluded "it is unlikely that such a request was ever received by the Department." *Id*. ¶ 14. Plaintiff has not rebutted State's declaration with probative evidence, and an agency's FOIA obligations begin only upon its receipt of a proper request. *Risenhoover v. U.S. Department of State*, No. 21-cv-2563, 2023 WL 2043218, at *3 (D.D.C. Feb. 16, 2023) (collecting cases); *see also Thomas v. FCC*, 534 F. Supp. 2d 144, 146 (D.D.C. 2008) (finding FOIA defendant "entitled to judgment as a matter of law" where plaintiff had not "produced a copy of the FOIA request purportedly at issue or specified when it was submitted to the agency, nor . . . credibly refuted defendant's reasonable conclusion drawn from a search of its files that it did not receive a FOIA request from plaintiff"). Therefore, defendants' motion as to the State Department is granted.

### D. Plaintiff's Motion for Fees and Costs

In his opposition, plaintiff requests, among other relief, "fees and costs for at least the partial victories aforesaid." Pl.'s Opp'n at 19. To the extent plaintiff's motion, ECF No. 100,

survives, *see Clemente v. FBI*, 867 F.3d 111, 121-22 (D.C. Cir. 2017) (discussing availability of "interim fee" awards in FOIA action), it is denied.

*Pro se* plaintiffs may not recover attorney's fees under the FOIA. *Burka v. U.S. Dep't of Health & Human Servs.*, 142 F.3d 1286, 1289 (D.C. Cir. 1998)). A *pro se* plaintiff is eligible for an award of "litigation costs reasonably incurred" when he has "substantially prevailed" by "obtain[ing] relief through either . . . a judicial order . . . or . . . a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(i)-(ii). Because neither has occurred here, plaintiff is not eligible for, much less entitled to, an award of costs.

## IV.  CONCLUSION

For the reasons stated above, defendants' Motion for Summary Judgment is GRANTED, and plaintiff's Motion for Fees and Costs is DENIED.

A separate Order consistent with this Memorandum Opinion will be filed contemporaneously.

/s/ *Beryl A. Howell*
United States District Judge

DATE:  December 15, 2025